Turley, J.
delivered the opinion of the court.
This is an action of covenant, brought by the defendant in error, to recover damages against the plaintiff for the nonperformance of a contract made on the 10th day of April, 1841, by which he promised to deliver to him, at one dollar per barrel, all the com he might raise to spare that year, thrashed *106 and sacked, by the first day of December, Jennings furnishing the sacks. The proof shows, that seven hundred and fifty sacks were accordingly furnished, worth about twenty cents apiece; that the com was sacked by Mays and tendered to Jennings; but that Mays, instead of measuring the corn by the bushel measure, refused to deliver it but by weight of fifty-two pounds to the bushel, two hundred and sixty to the barrel, which was refused by Jennings, and thereupon Mays sold the corn to another, by weight, at one dollar- and twenty-five cents per barrel. There was proof introduced, showing'that corn was often sold and delivered in that neighborhood by weight, and that there was but little difference in the quantity as ascertained by weight and measurement. The court charged the jury, “that the value of the sacks was recoverable in'this action; that the evidence establishing the mode of measurement was incompetent;- that they must not be governed by it, but consider it rejected; that the mode of measurement was prescribed by law to be by the bushel, and not by weight.” This charge is objected to upon both points, but we think without success. On the first point, by the terms of the contract the sacks were to be furnished ' by defendant in error, to be returned to him filled with corn. They were furnished and not returned, and of course, in estimating the damages for the breach of the contract, their value must be taken into consideration. On the second point, a barrel, dry measure, 'is by law fixed at five bushels, and not at two hundred and sixty pounds; and if a contract is made for so many barrels of corn, the purchaser is entitled to receive it by the bushel, unless he contract otherwise. Proof of a neighborhood practice cannot alter the law. Judgment affirmed.
Note —On demurrer to a plea, stating; a custom in Southampton, that any pound of butter exposed to sale in the markets of said town should and ought to weigh eighteen ounces; it was contended, that the custom was contrary to the law of the land and statutes, which direct that every pound should contain sixteen ounces.
Per cur. We are not called upon to decide whether a custom to sell butter in lumps of any particular weight is good or not. The question is, whether, when a person is selling' butter under the specific denomination of a pound, he shall be compelled to sell more than a pound. Butter is described to be sold by avoirdupois weight, by which a pound of butter weighs sixteen ounces: then how can a person who professes to sell a pound of butter be obliged tO'Sell more than a pound? ft might as well be argued, that a custom might prevail in a particular place that a less number of days than seven should *107 make a week, or that a less space of ground than an acre should be an acre. Such a doctrine is absurd. Noble v. Durell, 3 Term Rep. 271.
See Tomlin’s Law Die. title Measure, Petersdorff, vol. 15, page 391; 6 Coke, 67. Magna Charter ordains (ch. 25)-that “there shall be but one measure throughout England, according to the standard in the Exchequer.” 4 Inst. 273. In 5 Geo. 4, an act was passed, ascertaining and establishing uniformity of weights and measures.
At the organization of the federal government, authority was conferred upon congress to establish a uniform system of weights and measures. But, surprising as it may appear, no laws have as yet been enacted by that body for the perfection of so important an object. Some measures have been taken to obtain information on the subject, and able reports have been made by Messrs. Jefferson, Adams, and Hassler. By an order of congress, June 5,1836, a set of standard weights and measures, similar to those in use in England anterior to the passing of the ‘Act of Uniformity’ in May, 1834, have been prepared by Mr. Hassler for the use of each customhouse, and for each state. Hence, the old measures of England, superseded by the imperial system, with such modifications as local customs or state laws have ingrafted upon it, may be regarded as the general standard adopted in this country.
Most of the states of the Union have attempted to reduce their standards of weights and measures to a uniform system, and numerous laws have been enacted with that view; but so far from succeeding in their object, they have had, in most instances, an opposite effect. There are but few states in which the proportions of their measures are required bylaw to be the same — lineal, superficial, and cubic measures excepted— although they may bear the same names; and owing to the difficulty pf enforcing new regulations, strong prejudices against any innovation, and a constant influx of settlers from one state into another, and from various countries of Europe, who bring their own accustomed weights and measures, uniformity cannot be said to exist in any state of the Union. In this country, as did England and France before their new systems were adopted, local consumers do not feel the whole disadvantage of this confusion; but merchants and others, who make-large sales or purchase in different parts of the country, often experience serious difficulties in converting to their own local standards the quantities expressed according to another rate. The proportion which one standard bears to another is not always easily obtained; and when it is, the calculations to he made are often long and difficult, and may not always give an accurate result.
Hunt’s Merchants’ Magazine, vol. iv. page 344. McCulloch’s Commercial Dictionary, page 370.